# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA McGOWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 06-cv-0858 |
| BOROUGH OF AMBRIDGE, | ) | |
| MICHAEL McQUAIDE, Police Officer, | ) | |
| Borough of Ambridge Police Department, and | ) | |
| JAMES ESSEK, Police Officer, Harmony | ) | |
| Township Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

September 5, 2008

Presently before the Court are the following:

• MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, Police Officer James Essek, Harmony Township Police Department (*Document Nos. 31 and 32*, respectively);

• MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendants Borough of Ambridge and Police Officer Michael McQuaide (*Document Nos. 35 and 36,* respectively); and

• MEMORANDUM OF POINTS and ANSWER in opposition to the Defendants' motions for summary judgment filed by Plaintiff, Patricia McGowan (*Document Nos. 37-1 and 37-2*).

The issues have been fully briefed and the matter is ripe for disposition. The factual record has also been thoroughly developed via the CONCISE STATEMENT OF MATERIAL FACTS NOT IN DISPUTE filed by Defendant Police Officer James Essek (*Document No. 32*),

the APPENDIX TO DEFENDANT ESSEK'S MOTION FOR SUMMARY JUDGMENT (*Document No. 34*), the CONCISE STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT filed by Plaintiff (*Document No. 39*), and the APPENDIX IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT filed by Plaintiff (*Document No. 40*).

After a careful consideration of the motions, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Patricia McGowan, on her claims of alleged civil rights violations brought under § 1983. Therefore, for the reasons that follow, the Motions for Summary Judgment will be granted in their entirety.

### PROCEDURAL BACKGROUND

Plaintiff initiated this proceeding on June 30, 2006, by the filing of a five-count Complaint pursuant to 42 U.S.C. § 1983 in which she alleges that her civil rights were violated as a result of the conduct of Borough of Ambridge Police Officer Michael McQuaide and Harmony Township Police Officer James Essex when they responded to a police call which reported a fight in progress, arrested Plaintiff at the scene, and then subsequently prosecuted her. Specifically, Plaintiff claims general violations of her rights under the Fourth Amendment (Counts I and II), as well as separately enumerated claims of false arrest and malicious prosecution in violation of the Fourth Amendment (Counts III and IV). Plaintiff also alleges a civil conspiracy against Defendants to violate Plaintiff's rights by arresting her without probable cause and subsequently "agreeing" to fully prosecute. (Count V). At the heart of each of these claims is Plaintiff's

allegation that she was arrested on July 5, 2004, without probable cause when she was arrested and charged with failing to disperse upon official order and disorderly conduct.

Defendants have filed the instant motions for summary judgment in which they contend that Plaintiff has failed to proffer sufficient evidence to establish a violation of her constitutional rights.

### BACKGROUND

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

On July 5, 2004, Plaintiff and her son, Jeffrey McGowan, visited their friends Julia and Jennifer Pringle at their apartment in Crestview Village, arriving at approximately 1:00 p.m. Crestview Village is a 200-unit low income housing project situated along the border that separates the Borough of Ambridge from Harmony Township.

While there, Plaintiff and her son spent time in the Pringles' apartment (Apartment 111), as well as in the Pringles' backyard where a cook-out was underway. At approximately 3:00 p.m., Pam Townsend, another resident of Crestview Village who resided in Apartment 105, began to cause a commotion in the vicinity of the front of the Pringle apartment by yelling and screaming at Mary Urquhart, who was also attending the Pringles' cook-out and was also a resident of Crestview Village in Apartment 109. Shortly thereafter, a large-scale brawl erupted in the Pringle yard that involved approximately twenty (20) people.[1] The altercation included Jeffrey Rogers

---

[1] During her deposition, Plaintiff described the scene as follows:
"It was a brawl. They were fighting. They were on top of each other . . . ."

(son of Pam Townsend), Miguel Ogbara, Ashly Marshman (daughter of Mary Urquhart), Julia Pringle, and Jennifer Pringle. Plaintiff denies that her son was involved in the brawl.

Police Officer Michael McQuaide ("McQuaide") responded to a 911 call which reported an assault in progress at the Community Center in Crestview Village and that a man was beating a woman. As the police arrived, they saw Jeffrey Rogers flee the scene on foot. McQuaide was told that Jeffrey Rogers had a weapon on his person. McQuaide lost sight of the fleeing Rogers; accordingly, McQuaide requested additional units from other departments to set up a perimeter and also requested a K-9 unit.

Defendant James Essek ("Essek"), a sergeant with the Harmony Township Police Department, was one of the officers who responded to McQuaide's request for backup. As Essek arrived, other responding police officers were attempting to regain control of the situation. Essek described the scene as follows:

> When I first arrived, the main person who seemed to be causing a lot of problems there was a woman by the name of Pam Townsend. I was familiar with her. That is, her son is Jeffrey Rogers, and she was screaming about the fight and the other people that were involved and that they had run into another house. . . . the Ambridge officers were chasing people and trying to round people up. So I got Pam Townsend, asked her to sit in my car until Officer McQuaide and the officer from Ambridge came over. I decided we were just going to try to deescalate the crowd and try to get things settled down.

Essek testified that when he arrived at the scene there were probably "50 to 75 people" all yelling at each other, but that the actual fighting between the residents had "broken up" upon the arrival of the police.

Witnesses gave conflicting reports to the police of what had occurred. Ashley Marshman told the police that Jeffrey Rogers attacked her by punching her in the face, dragging

her across the street, and pulling a gun on her. Julia Pringle told the police that she saw Jeffrey Rogers attacking Marshman, that she yelled at Rogers to stop, and was then pushed to the ground by Rogers. Jennifer Pringle told the police that she attempted to pull Jeffrey Rogers off of Marshman, and was punched and scratched in the face as she did so. Marshman and the Pringles then told the police that Jeremy Shoup and Jeffrey McGowan, Plaintiff's son, intervened and that a fight occurred between Shoup and Rogers.

Other witnesses at the scene told the police that Shoup and Jeffrey McGowan had jumped Rogers and began beating him until others intervened to attempt to break it up.

Upon witnessing what was occurring, Plaintiff instructed her son to leave Crestview Village with her. They were given the car keys to Jeremy Shoup's vehicle and began walking to the car with the intention to leave the scene. However, they were not able to leave as the vehicle was blocked by police and other emergency vehicles.

As Plaintiff and her son passed Pam Townsend, Ms. Townsend identified Jeffrey McGowan to the police and said something to the effect that Jeffrey McGowan was one of the individuals who had attacked her son, Jeffrey Rogers. Pam Townsend specifically pointed to Jeffrey McGowan and said, "That's the one. He's the one that was beating on my boy."

Plaintiff and her son, Jeffrey McGowan, were sitting in Shoup's vehicle, when both Essek and McQuaide approached the vehicle. McQuaide instructed Plaintiff not to leave the scene. The officers then left the vehicle, arrested another individual, Miguel Ogbara, and then returned to the vehicle in which Plaintiff and her son were sitting. Defendant Essek told Jeffrey McGowan to get out of the car. Defendant McQuaide then arrested Jeff McGowan for disorderly

conduct. Defendant Essek testified that with the arrest of Jeffrey McGowan, all persons involved in the fight-brawl had been arrested or were in transit to the police station.

As she saw her son being arrested, Plaintiff exited the vehicle and began protesting his arrest. Plaintiff told both Essek and McQuaide that her son was being wrongly accused. Plaintiff described her exchange with Defendant McQuaide as follows:

> I tried to tell them what happened. I was continually told to shut up. I was told to shut up several times. At one point, one of the police officers asked what I was doing at the Village. I go to the Village because I try to help out the single parents, and I am friends with some of the people there. . . .
>
> I said, I am here because I, you know, I come here to, you know, pick up the kids once in a while. He said, "Do you have family here?" I said, "No." "Well, you are not allowed here if you don't have family here." I said, "That is not true. My aunt lives at the housing plan in McKees Rocks. I know the rules. I have to have a criminal record in order not to be able to come to the Village . . . ."

Defendant Essek described the exchange between Plaintiff and Defendant McQuaide as follows:

> She was told by uniform police officers to vacate from that property, and she just kept saying that this is America, she didn't have to do any of that, she has rights and everything too.

According to the Affidavit of Probable Cause, Plaintiff became more boisterous and eventually was placed under arrest. Defendant McQuaide filed a police criminal complaint with an Affidavit of Probable Cause on July 7, 2004, against Plaintiff for Failure of Disorderly Persons to Disperse upon Official Order, in violation of 18 Pa. C.S.A. § 5502, and Disorderly Conduct, in violation of 18 Pa. C.S.A. § 5503(a)(2)(4). Plaintiff was arraigned before a District Magistrate on the charges on August 18, 2004. Following her arraignment, Plaintiff signed a non-monetary bail

bond that required her to report to the regional booking center for fingerprinting and to be photographed.

A preliminary hearing was conducted on August 19, 2004 and continued to August 27, 2004. At the preliminary hearing, the charges against Plaintiff were held over for court. Plaintiff was acquitted at trial on the offenses in the Court of Common Pleas of Beaver County on December 8, 2004.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In

deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

Section 1983 of title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). A *prima facie* case under § 1983 requires a plaintiff to demonstrate: (1) that the alleged wrongful conduct was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morrra,* 212 F.3d 798, 806 (3d Cir. 2000). Both elements must be present to sustain a § 1983 claim.

A. <u>Claims Against Defendants Essek and McQuaide</u>

It is not disputed that Defendants Essek and McQuaide were state actors at all relevant times. Therefore, the remaining analysis focuses only on the second prong of the *prima facie* case, i.e., has plaintiff demonstrated that the conduct deprived her of a right, privilege, or immunity secured by the Constitution or laws of the United States.

1. *False Arrest*

In order for Plaintiff to establish a constitutional violation of false arrest under § 1983, Plaintiff must establish that probable cause did not exist for her arrest. *Groman v. Township v. Manalapan*, 47 F.3d 629, 636 (3d Cir. 1995). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the

arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). More specifically, probable cause to arrest "exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

"The proper inquiry in a 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir. 1988).

Initially, the Court notes that the undisputed record reflects that Defendant Essek was <u>not</u> the arresting officer of Plaintiff. As such, Defendant Essek was not personally involved in the alleged violations of Plaintiff's right to be free from false arrest. The United States Supreme Court has held that liability under 42 U.S.C. § 1983 is individual and requires evidence of personal involvement in a constitutional violation. *Rizzo v. Goode*, 423 U.S. 363 (1976). While Plaintiff alleged in her Complaint that Defendant Essek arrested her, the undisputed summary judgment record reflects that Defendant Essek was not the arresting officer. The record also reflects that Defendant Essek is a sergeant with the Harmony Township Police Department. As such, he was not a supervisor of any of the Ambridge Borough police officers, he was not a member of the Ambridge police department, he did not execute the Affidavit of Probable Cause for Plaintiff's arrest, nor was he the arresting officer. Accordingly, summary judgment will be granted to Defendant Essek on Plaintiff's false arrest claims.

The record does confirm that Defendant McQuaide, a police officer with the Borough of Ambridge police department, arrested and charged Plaintiff with failure to disperse upon official order, 18 Pa. C.S.A. § 5502, and disorderly conduct, 18 Pa. C.S.A. § 5503. The failure to disperse statute provides as follows:

> Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree.

18 Pa. C.S.A. § 5502. The disorderly conduct statute provides as follows:

> (a) **Offense defined**. -- A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>   (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>   (2) makes unreasonable noise;
>   (3) uses obscene language, or makes an obscene gesture; or
>   (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
>
> (b) **Grading.** - An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa. C.S.A. § 5503. Plaintiff was prosecuted under subsection (a)(4).

It is not disputed that a large scale brawl which involved 20 participants erupted at Crestview Village on July 5, 2004. Plaintiff admits that a resident of Crestview Village, Mary Urquhart, made several calls to the police in which she reported that an assault by a male on a woman was in progress. Also, Plaintiff admits that the responding police officers were told that

10

one of the suspects, Jeffrey Rogers, was in the vicinity and was armed. Plaintiff also admits that the responding police officers were told conflicting stories by the witnesses about what had happened.

Significantly, Plaintiff also admits that she was attempting to leave the area with her son as the police were arriving when Pam Townsend, another witness, specifically identified her son to the police as one of those involved in the brawl. Plaintiff further admits that she exited the vehicle and attempted to intervene on behalf of her son as he was being arrested. Plaintiff admits that she was told by the police to be quiet, but that she continued to tell the police officers that the "wrong" person (her son) was being arrested.

Plaintiff also admits that Defendant McQuaide told her that she should not be in Crestview Village and that she responded by telling Defendant McQuaide that he was wrong and that she did not have to leave.

The Court finds and rules that the summary judgment record contains more that sufficient evidence to find the existence of probable cause to arrest Plaintiff for failing to disperse and for disorderly conduct. There is no dispute that three or more persons were participating in a course of disorderly conduct, *to wit,* a large scale brawl, which caused and was further reasonably expected to cause substantial harm or serious inconvenience, annoyance or harm. Defendant Essek testified that when he arrived at the scene, there were 50 to 75 people in the immediate area, with people yelling at one another. Plaintiff was told several times not to talk, yet continued to do so. Plaintiff was told to vacate the area, yet she refused to do so.

In sum, given the totality of the circumstances and given the description of the events that Plaintiff readily admits, the Court finds and rules that Defendant McQuaide had a reasonable

11

basis to believe that Plaintiff had committed offenses (i.e., failure to disperse and disorderly conduct) which justified her arrest on July 5, 2004. Accordingly, summary judgment will be granted to Defendant McQuaide on Plaintiff's claims of false arrest.

      2.    *Malicious Prosecution*

The United States Supreme Court has never defined the contours of a section 1983 claim for malicious prosecution under the Fourth Amendment. *Wallace v. Kato*, ___ U.S. ---, 127 S. Ct. 1091, 1096 n.2 (2007); *Albright v. Oliver*, 510 U.S. 266, 270-71 (1994) (plurality opinion). However, the United States Court of Appeals for the Third Circuit has recognized the existence of that kind of claim. *Estate of Smith v. Marasco,* 318 F. 3d 497, 521 (3d Cir. 2003).

To prevail on a Fourth Amendment malicious prosecution claim under Section 1983, a plaintiff is required to establish that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeded ended in his or her favor; (3) the defendant initiated the proceedings without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) (*quoting Estate of Smith*, 318 F.3d at 521).

Here, the second element of Plaintiff's malicious prosecution claim is not disputed by either Defendant Essek or McQuaide. Plaintiff was acquitted at trial on the charged offenses in the Court of Common Pleas of Beaver County on December 8, 2004.

However, Defendant Essek argues that Plaintiff's claim for malicious prosecution against him must fail because she has not met the first element of her claim, *i.e.,* that he initiated a criminal proceeding against her. The initiation requirement limits the defendants against whom a

plaintiff can assert a claim for malicious prosecution. In her Complaint, Plaintiff does not specify which of the defendants are responsible for the alleged malicious prosecution. Rather, she states that the "Defendants, under color of law, without probable cause or justification did initiate and fully participated in the criminal prosecution against" her. However, the summary judgment record reflects that not all of the named defendants were involved in initiating the criminal proceeding against her. The record reflects that Defendant Essek did not arrest Plaintiff and took no part in the initiation of the criminal proceedings. Further, the summary judgment record is completely void as to any evidence which reflects that Defendant Essek had any personal involvement in the prosecution of Plaintiff, other than simply testifying as witness. As a police officer, Defendant Essek enjoys absolute immunity for this testimony. *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983) (section 1983 does not allow recovery of damages against a police officer for testimony in a judicial proceeding). Therefore, the Court will grant summary judgment and dismiss Plaintiff's malicious prosecution claims against Defendant Essek.

Defendant McQuaide, and Defendant Essek in the alternative, argue that Plaintiff has also failed to establish the third element (probable cause) and the fifth element (deprivation of liberty) of her malicious prosecution claim. The Court agrees.

The fatal defect in Plaintiff's Section 1983 claim for malicious prosecution lies in the element of probable cause.[2] As discussed at length *supra*, Defendant McQuaide had more than

---

[2] The Court of Appeals clarified in *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007), that probable cause to arrest on one charge does not insulate law enforcement from liability for malicious prosecution on other charges where no probable cause exists. Thus, in examining a claim for malicious prosecution, based on more than one charge, the district court must "separately analyze the charges claimed to have been maliciously prosecuted." *Id.* at 85.

13

sufficient probable cause to arrest Plaintiff for failure to disperse and disorderly conduct. Further, Plaintiff cannot show an absence of probable cause because it is undisputed that following the arraignment and preliminary hearing, the charges against Plaintiff were held over for court. While not conclusive evidence of the existence of probable cause, a decision of a neutral district justice to hold over Plaintiff for trial on the charges constitutes "weighty evidence" that Defendant McQuaide had probable cause to request issuance of the arrest warrant. *See Tarlecki v. Mercy Fitzgerald Hospital*, 2002 WL 1565568, *3 (E. D. Pa. 2002).

Furthermore, the Court finds and rules that Plaintiff has failed to produce any evidence to support the fifth element of her malicious prosecution claim, *i.e.*, deprivation of liberty. The record reflects that Plaintiff was arrested and processed on July 5, 2004 and released on the same day. Following the filing of a police criminal complaint on July 7, 2004, Plaintiff received a summons but was not subsequently arrested. Plaintiff did not have to post bail, did not have to report for pre-trial services, was not in pre-trial custody, did not have restraints imposed on her liberty, and was not under any geographic limitations on her travel. All that was required of her was processing at the Beaver County Regional Booking Center.

The United States Court of Appeals for the Third Circuit has said, "The type of constitutional injury the 4th Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). Plaintiff does not allege any facts or provide any evidence to support her allegation that she was seized or deprived of her liberty. The record does not reflect that any restrictions were placed upon Plaintiff after the police complaint was filed or after any arraignment or preliminary hearing. Mere attendance at a hearing does not satisfy the seizure

requirement for a malicious prosecution claim. *Hanks v. County of Delaware*, 518 F. Supp.2d 642, 651 (E.D. Pa. 2007). The only seizure alleged is the Plaintiff's arrest on July 5, 2004, and that occurred prior to the initiation of any criminal proceedings.

For all these reasons, summary judgment will be granted to Defendant Essek and Defendant McQuaide on Plaintiff's claims of malicious prosecution.

B. Municipal Liability Claim Against the Borough of Ambridge

To sustain a § 1983 claim against a municipality, a plaintiff must show that the action in question was taken pursuant to a governmental policy. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

Plaintiff's Complaint sets forth broad claims of municipal liability against the Borough of Ambridge, *i.e.*, that there was a lack of training, a failure to train and supervise, and that the Borough of Ambridge had rules, regulations or directives that were unconstitutionally applied to Plaintiff and caused her injuries. In particular, Paragraph 23 of the Complaint states that the alleged policies or directives of the Borough allowed officers to seize persons without probable cause and without a full investigation into the facts.

Plaintiff has completely failed to establish that the Borough of Ambridge has a custom, policy, or practice of depriving individuals of their constitutional rights and/or that the Borough of Ambridge has failed to properly supervise or train its employees. There is absolutely no record evidence that the Borough of Ambridge was deliberately indifferent with respect to the supervision or disciplining of its officers. The Court finds and rules that the bald assertions of

Plaintiff are not supported by any facts or testimony of record. Accordingly, summary judgment will be granted to the Borough of Ambridge on Plaintiff's claim of municipal liability.

C.     Claims for Civil Conspiracy

In Count V of her Complaint, Plaintiff asserts a civil conspiracy claim against all defendants. As the United States Court of Appeals for the Third Circuit has explained, to allege a civil conspiracy for purposes of § 1983, the plaintiff must show that two or more persons combined to do an unlawful or criminal act, or to do a lawful act by unlawful means or for an unlawful purpose. *Ammlung v. City of Chester*, 494 F.2d 811 (3d Cir. 1974). The plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Hammond v. Creative Fin-Planning Org., Inc.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). In addition, "[a]greement is the *sine qua non* of a conspiracy." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).

The Court is mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances. The Court is equally mindful that, as the Tenth Circuit warned, "caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions." *Cudlow v. State of Oklahoma*, 700 F.2d 1291, 1303 (10th Cir. 1983). However, the rule is clear that allegations of conspiracy must provide

some factual basis to support the existence of the elements of a conspiracy: a combination, agreement, or understanding. The summary judgment record is completely void of anything more than conclusions concerning a conspiracy. Plaintiff points to no facts or particularized allegations which would sufficiently support a showing that the Defendants came to an understanding or agreement to deprive her of her constitutional rights. As the court in *Spencer* stated, it is "not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer*, 968 F. Supp. at 1020.

The Court finds and rules that there is absolutely no evidence or factual basis in the summary judgment record to support Plaintiff's allegations that Defendants came to an understanding or agreement to deprive her of her constitutional rights. Accordingly, summary judgment will be granted to all Defendants on Plaintiff's claim of civil conspiracy.

### CONCLUSION

Viewing the facts in the light most favorable to Plaintiff, the Court finds and rules that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Patricia McGowan, on her claims of alleged civil rights violations brought under § 1983. Accordingly, for the reasons discussed *supra,* the motions for summary judgment filed by the Defendants will be granted.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA McGOWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 06-cv-0858 |
| BOROUGH OF AMBRIDGE, | ) | |
| MICHAEL McQUAIDE, Police Officer, | ) | |
| Borough of Ambridge Police Department, and | ) | |
| JAMES ESSEK, Police Officer, Harmony | ) | |
| Township Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 5th day of September, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Motion for Summary Judgment filed by Defendant Police Officer James Essek is **GRANTED** in its entirety;

2. The Motion for Summary Judgment filed by Defendants Borough of Ambridge and Police Office Michael McQuaide is **GRANTED** in its entirety; and

3. The Clerk is ordered to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Paul A. Ellis, Jr., Esquire
Law Office of Paul Ellis & Associates
Email: paellisjresq@aol.com

Edmond R. Joyal, Jr., Esquire
Law Office of Joseph S. Weimer
Email: ejoyal@stpaultravelers.com

Mark R. Lane, Esquire
Dell, Moser, Lane & Loughney
Email: mrl@dellmoser.com

Christian D. Bareford, Esquire
Dell, Moser, Lane & Loughney, LLC
Email: cdb@dellmoser.com